UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NATIONAL PARTNERS PFCO, LLC,                    :

                                       :    Civil Action No.: 26-6906

                        Plaintiff,    :

                                         :

          - against –    :

                                         :    **COMPLAINT**

FOLSOM INSURANCE AGENCY LLC,    :

                                         :

                      Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff National Partners PFco, LLC and its wholly-owned subsidiaries ("NP"), for its complaint against Defendant Folsom Insurance Agency LLC d/b/a Connect Insurance ("Folsom Insurance"), alleges upon knowledge with respect to itself and its own actions and upon information and belief with respect to all other matters as follows:

## SUMMARY

1.      This action arises from Folsom's material breaches of the obligations and representations and warranties under the parties' Premium Finance Origination Agreement dated April 24, 2025 (the "Agreement").

2.      Pursuant to the Agreement, Folsom Insurance acted as a "Producer" and thereby agreed to generate and submit insurance premium finance contracts to NP as "Lender," which would in turn provide total insurance premiums, taxes and fees listed on each accepted contract of an insured, less the amount of down payment credited from the insured.

3.      However, Folsom Insurance materially breached the Agreement in at least five (5) respects by: (a) failing to transmit the financed amounts from NP to the insurance carriers; (b) failing to remit refunds to NP when insurance policies or endorsements were canceled and Folsom Insurance received credits; (c) failing to return unearned commissions (in addition to the

credits) on those same policies or endorsements that were canceled; (d) failing to return additional broker fees (in addition to the credits and unearned commissions) on those same policies or endorsements that were canceled; and (e) impairing NP's right to collect on financing deficiencies.

4.     NP advanced over $1 million in financing to Folsom Insurance and now brings this action seeking approximately $1.2 million in damages, plus interest, costs, fees, expenses, and disbursements.

**PARTIES**

5.     Plaintiff NP is a limited liability company organized under the laws of the State of Delaware and having an office for the transaction of business at 2655 S Le Jeune Rd, Ste 800, Coral Gables, FL 33134.

6.     NP's members and citizenship are as follows:

Bert Irigoyen -- Florida

Axel Kloch -- Colorado

Jenn Johnson -- Illinois

Elsa Soler -- Florida

Kristin Suarez -- California

Phaedra Hawn -- Colorado

WebBank -- Utah

7.     Upon information and belief, Defendant Folsom Insurance is a limited liability company organized under the laws of the State of Texas where it does business and where it has a registered agent of United States Corporation Agents, Inc., 10601 Clarence Dr., Suite 250, Frisco, Texas 75033.

2

8. Upon information and belief, Cody Folsom is an individual residing in the State of Texas and upon information and belief is the managing member and/or primary principal of Folsom Insurance.

## JURISDICTION AND VENUE

9. This Court has jurisdiction of this matter as there is complete diversity of citizenship between NP and Folsom Insurance and the amount in controversy exceeds $75,000.

10. Jurisdiction and venue are also proper in this Court because the parties contractually consented to the exclusive jurisdiction of the state and/or federal courts located in New York, New York in connection with any dispute based on, arising out of, or in connection with their Agreement pursuant to the jurisdiction, venue, and governing law clause therein.  The parties also agreed that New York law (not including its conflicts of law provisions) governs their contract and disputes arising therefrom, and they have waived the right to trial by jury of any controversy arising under the Agreement.

## NATURE OF THE ACTION

11. NP is an insurance premium finance company that provides premium financing for companies and businesses seeking commercial and business insurance coverage.

12. Folsom Insurance is an insurance agent or broker that provides trucking insurance for its customers and is operated and controlled by Mr. Folsom.  Upon information and belief, Folsom Insurance operates out of Texas.

**The Parties' Agreement**

13. On or about April 24, 2025, on behalf of Folsom Insurance, Mr. Folsom filled out a New Agent Application with NP and made the following representations in that application: Folsom Insurance (1) was established in 2020; (2) has 30 employees and 15 producers; (3) is an

LLC; (4) has only 1 owner with an interest greater than 20% (which NP believes is Mr. Folsom); and (5) arranges financing for coverage in the "trucking" industry allegedly in the amount of $12 million annually.

14.    After this application was approved, on or about April 24, 2025, the parties entered into the Agreement with NP as Lender and Folsom Insurance as "Producer," and Mr. Folsom executed the Agreement on behalf of Folsom Insurance.

15.    Under the Agreement, Folsom Insurance agreed to generate premium finance contracts from its insurance clients (the "Insureds") purchasing insurance in exchange for a service charge payable by NP.

16.    Additional relevant provisions of the Agreement with respect to premium finance contracts originated or generated by Folsom Insurance as Producer include as follows:

> **Unearned Producer Service Charges**: Producer Service Charges, if pre-paid by Lender, upon a cancellation or pre-payment by Insured, the Producer Service Charge will be charged back to the Producer and Producer shall promptly return to Lender such chargeback amount. No producer compensation or Service Charge shall be due for Contracts submitted which are not Eligible Contracts.

> **PRODUCER REPRESENTATION [sic] AND DUTIES**

> * * *

> 2.  **Producer Collection of Down Payment**: Producer shall collect from the Insured the required down payment and ensure its delivery to the Insurance Company producing the policies stated under the Contract.

> 3.  **Payment of Premium**: Lender shall pay the Amount Financed for each policy to the applicable issuing Insurance Company (or its designated general agent), unless Producer requests (and Lender consents) that Lender pay Producer the Amount Financed and that Producer, in turn, pays the Amount Financed to the applicable Insurance Company.  For any such amount paid by Lender to Producer, Producer agrees it is its responsibility and duty to timely pay the total premium, taxes and fees listed on the Contract to the respective issuing Insurance Companies, their designated general agents, or other entities as identified in the Contract. The source of funds for delivery of such amounts due shall be the down payment made by the Insured and the Amount Financed shown in the Contract.

4

\* \* \*

5. **Return of Unearned Premium and Commission on Cancellations**: In the event an insurance policy financed by Lender is cancelled (or the policy generates premium return of any type) Producer agrees and covenants it is legally bound to deliver, and shall deliver direct to Lender, the unearned premium and commission for all policies financed within thirty-five (35) days following receipt or credit of such funds.

6. **Payments Received by Producer**: Producer shall direct Insured to send payments directly to Lender at the address (or electronic instructions) designated by Lender. However, should Producer receive any related payment, Producer agrees to promptly remit to Lender, by the next business day following receipt, all payments received relating to the Contracts funded by Lender. These payments are not credited to the Contract until received and processed by Lender.

17.     Beginning on or about May 5, 2025, NP began providing financing arranged by Folsom to the Insureds.  In less than six months, Folsom Insurance would begin breaching its contractual obligations under the Agreement.

18.     During 2025, Folsom Insurance placed insurance coverage for the Insureds primarily through a company called Cover Whale.  Starting no later than Fall 2025, there was increasing cancellation activity, unpaid carrier obligations, and unfunded accounts.

19.     By October 2025, the Insureds' cancellation rate reached approximately 19%, 53 accounts out of 283 were cancelled, and NP identified and calculated approximately $871,000 in cancelled funds that should have been returned by Folsom Insurance to NP.

20.     NP discovered that Folsom Insurance failed to forward to Cover Whale over $600,000 in loan proceeds that NP sent to Folsom in connection with the financing of the Insureds' premiums.

21.     By late October 2025, NP ceased funding activity and placed Folsom Insurance into unapproved status, and no new loans to Folsom Insurance were allowed.  NP suspended

5

funding pending resolution of Folsom Insurance's cancelled accounts and its respective obligations.

22. NP attempted to mitigate by investigating policy cancellations and communicating with Cover Whale to uncover the cancellations and non-payment issues.

23. Between February and May 2026, NP continued to investigate and communicate with Cover Whale and discovered that Folsom Insurance breached the Agreement by (a) failing to transmit the financed amounts from NP to the insurance carriers, including Cover Whale, (b) failing to remit refunds to NP when insurance policies or endorsements were canceled and Folsom Insurance received credits, (c) failing to return unearned commissions (in addition to the credits) on those same policies or endorsements that were canceled, (d) failing to return additional broker fees (in addition to the credits and unearned commissions) on those same policies or endorsements that were canceled; and (e) impairing NP's right to collect on financing deficiencies.

24. NP also learned from Cover Whale that Folsom Insurance had allegedly made misrepresentations during the quoting process to obtain coverage for its insureds.

25. NP's damages exceed $1.2 million.

26. Despite due demands for payment, Folsom Insurance and Mr. Folsom have failed and refused to pay the amounts that Folsom Insurance contractually owes under the Agreement to NP.

27. NP has therefore been damaged because of Folsom Insurance's wrongful conduct, including the loss of unpaid financing, refunds, unearned credits, and Producer fees, as well interest and costs to date.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract – the Agreement)

28.     NP repeats and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth herein.

29.     The Agreement is a valid and binding contract between NP, on the one hand, and Folsom Insurance, on the other hand.

30.     NP fully performed under the Agreement.

31.     Folsom Insurance breached the Agreement in several material respects as set forth in detail herein.

32.     Each breach of the Agreement by Folsom Insurance as alleged herein is itself a separate and material breach of the Agreement.

33.     As a result of the foregoing, NP has been damaged in an amount to be determined at trial, but in no event less than $1,210,814.46, plus interest, costs, fees, expenses, and disbursements.

**WHEREFORE**, NP respectfully requests judgment as follows:

A.     On the First Cause of Action, awarding NP compensatory damages in an amount to be determined at trial, but in no event less than $1,210,814.46, plus interest, costs, expenses and disbursements;

B.     Awarding NP its costs, expenses, and disbursements in this action, including reasonable attorneys' fees; and

C.     Granting NP such other and further relief as to this Court deems just and proper.

7

Dated:   New York, New York
         August 12, 2026

                                        _s/Robert A. O'Hare Jr._____
                                        Robert A. O'Hare Jr.
                                        Michael Zarocostas
                                        Veronika Reizin
                                        O'HARE PARNAGIAN LLP
                                        20 Vesey Street, Suite 300
                                        New York, NY 10007
                                        (212) 425-1401
                                        rohare@ohareparnagian.com
                                        mzarocostas@ohareparnagian.com
                                        vreizin@ohareparnagian.com

                                        *Attorneys for Plaintiff*

8